UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.     )<br>)<br>SHAKEEM JOHNSON,     )<br>a/k/a "SHA-MONEY,"     )<br>)<br>Defendant.     ) | Criminal No: 25-cr-10242-FDS |

## MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION

A 60-month sentence in this matter would communicate a clear message to the defendant, that society has laws that he simply must follow. The defendant, Shakeem Johnson, a/k/a "Sha-Money," is not merely a drug dealer. He is not merely a gang member. And he is not merely an individual who has repeatedly found himself involved in incidents related to drug trafficking, firearms and violence over the past two decades. Instead, he is each and every one of these things. Not just because I say so, but because he has earned these characterizations during his life of crime.

The defendant, while still on parole for a 2016 conviction for manslaughter in a gang-related shooting, began discussing his drug trafficking activity with another Annunciation Road / Mission Hill gang member (who was incarcerated and speaking on recorded jail calls), almost immediately upon his release. Following these communications, investigators observed the defendant repeatedly traveling to the "Mass and Cass" area of Boston, a location known for drug use and drug distribution, and engage in hand-to-hand drug transactions. Then, when investigators executed a search warrant on the defendant in April of 2025, investigators seized 45.1 grams of cocaine base from his person and an additional 24.4 grams of fentanyl from his Lynn residence, along with other items indicative of street-level drug distribution. *See* PSR ¶¶ 13-20.

1

For these reasons, along with the defendant's criminal history, the circumstances here justify the government's recommendation of 60 months of incarceration. The government also seeks a term of supervised release of 4 years with certain conditions including a restriction aimed at preventing the defendant from re-uniting with his Annunciation Road / Mission Hill gang associates upon release from prison and returning to drug dealing and violent crimes. This recommendation reflects the seriousness of the offense, and is sufficient but no greater than necessary to accomplish the goals of sentencing.

I.    THE ADVISORY SENTENCING GUIDELINES

The government agrees with the Presentence Report [1] calculations of the defendant's offense level and criminal history category. The defendant is accountable for at least 100 kilograms, but less than 400 kilograms of converted drug weight that he possessed with intent to distribute. *See* PSR ¶ 30. The defendant is also responsible for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, which increases the base offense level by 2. *See* PSR ¶ 31. His base offense level is 26. *See* PSR ¶ 35. The defendant is also entitled to a three-level acceptance of responsibility reduction. *See* PSR ¶¶ 37-38. The defendant's total offense level is 23. *See* PSR ¶ 39. He faces a statutory minimum sentence of 60 months, based on the weight of the cocaine base he possessed with intent to distribute. *See* PSR ¶ 97. The defendant most recently served a sentence of 12 to 14 years in state prison for manslaughter, and has numerous prior criminal arrests and convictions, resulting in three criminal history points. *See* PSR ¶ 46. As a result, the defendant is in criminal history category II. *See* PSR ¶ 48. Based upon a total offense level of 23 and a criminal history category II, along with the statutory 5-year minimum mandatory sentence, the advisory guideline range is 60-63 months. *See* PSR ¶ 98.

---

[1] References to the Presentence Report are by paragraph (PSR ¶ ___).

## II.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The factors set forth in 18 U.S.C. § 3553(a) assist the Court in determining a sentence that is sufficient, but not great than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence for criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available, and the GSR.

Consideration of the § 3553(a) factors demonstrates that a sentence of 60 months, followed by 4 years of supervised release, is the appropriate sentence in this case.

### a. Nature of the Offense

The nature and circumstances of the defendant's drug trafficking justify a significant sentence of 60 months.  In analyzing defendant's conduct and eventual arrest, the Court should first consider the brazen nature of the defendant's crimes.  He discussed his drug trafficking activity on jail calls with an incarcerated Annunciation Road / Mission Hill gang member, almost immediately following his own release; he frequently traveled to the "Mass and Cass" area of Boston and engage in hand-to-hand drug transactions, which has led to additional state charges in Suffolk County; and then when he was caught, he had significant weights of crack cocaine and fentanyl on his person and in his residence, ready to be dealt to additional drug buyers if given the opportunity. Further, the defendant did all this within months of being granted parole in January, 2025 for a manslaughter conviction and lengthy state prison sentence. *See* PSR ¶¶ 13-20.

Each part of this conduct also demonstrates the seriousness of the defendant's offenses, based on the short period of time in which he engaged in this activity, the defendant's readiness to sell more, and his desire to further his drug trafficking business.

Cocaine and fentanyl are deadly drugs that have created havoc in the United States, and more specifically in Massachusetts, over the past several years. The tragedies of drug abuse and overdose deaths are sadly too familiar to many families across this District.

When considering the nature of the drug trafficking involved in this investigation, it remains critical not to lose sight of the devastating effects cocaine use has on users and communities where dealers like these defendants who are selling drugs for profit. Fatalities involving cocaine are increasing, and cocaine was involved in 15,025 overdose deaths in the first six months of 2023, according to provisional CDC data. Cocaine-related deaths have increased every year since 2015, often because these drug consumers purposely use both stimulants and opioids as a result of their drug addiction. [2]

Massachusetts has been one of the states hardest hit by the opioid crisis. Based upon the 2023 data available to date, of the 2,310 individuals whose deaths were determined to be opioid–related and a toxicology screen was performed, fentanyl was present in 93% of cases, and cocaine was present in 53% of cases, the two most common substances found, followed by alcohol at 28%.[3] These statistics convey in stark terms the tragic impact of this drug epidemic on families and communities across Massachusetts.

---

[2] DEA, 2024 NATIONAL DRUG THREAT ASSESSMENT at 35 (2024), *available at* https://www.dea.gov/sites/default/files/2024-05/NDTA_2024.pdf (last visited August 28, 2024)

[3] Massachusetts Department of Public Health, *Data Brief: Opioid-Related Overdose Deaths Among Massachusetts Residents (June, 2023), available at* https://www.mass.gov/doc/opioid-related-overdose-deaths-among-ma-residents-june-2023/download (last visited on August 28, 2024).

The defendant was part of the narcotics supply chain that contributed to such tragedies. Further, the defendant was not only engaged in drug trafficking, but also did so while on parole for a gang-related homicide. Drug trafficking is a risky endeavor, and the defendant, who is no stranger himself to being involved in crimes of violence, made himself available to an increased potential of violence associated with his behavior.

### b. Characteristics of the Defendant

The defendant is 35 years old. *See* PSR ¶ 72. The government recognizes that the defendant had a difficult childhood. As a child, the defendant's upbringing was significantly affected by crime and drug activity, and he informed United States Probation that he has lost several friends and family members to gun violence and substance-abuse related causes. *See* PSR ¶ 75. The defendant has no major health concerns, but he has injuries due to being a victim of violence, including four gunshot wound injuries when he was shot at the age of 20. *See* PSR ¶¶ 75, 79. The defendant has never had any formal employment. *See* PSR ¶ 93. Lastly, the defendant acknowledged that he has a history of excessive alcohol consumption and substance abuse issues, that have been ongoing since he was a teenager. *See* PSR ¶ 86-91. A sentence of 60 months in the custody of the Bureau of Prisons ("BOP") would afford the defendant the opportunity to avail himself to inmate programs and services including, substance abuse treatment, educational programs, and vocational training.

The defendant's criminal history includes adult convictions for trespassing, drug possession, receiving stolen property, and most notably, his 2016 conviction for manslaughter and possession of a firearm without a permit. *See* PSR ¶ 41-45. According to the reports and court documents for the 2016 conviction, the homicide victim, Nicholas Martinez was shot and killed while his vehicle was stopped at a red light on Southampton Street in Boston. Following the shooting, the defendant - charged as a joint venturer in the homicide that was planned amongst himself and his fellow Annunciation Road / Mission Hill gang associates - was stopped

5

in the suspect vehicle and sitting in the passenger seat, along with the driver, Jaquan Hill, and the shooter, Raymond Concepcion. Ultimately, Concepcion (a juvenile at the time) told detectives that he shot the gun because he was scared and suggested other gang members told him it "was the only way out" of the Mission Hill gang. The defendant admitted to knowing about the plan to kill Martinez, and helped Concepcion flee after the shooting. The 22 year-old victim was killed one day after he had testified in a separate murder trial, incriminating another Mission Hill gang member. After being sentenced to 12 to 14 years in state prison for his involvement, the defendant was granted parole and released on or about January 7, 2025, only to be arrested in this incident three months later, on April 11, 2025.

The defendant's connections to the Annunciation Road / Mission Hill street gang persist to current day, even while incarcerated. Recently, on December 11, 2025, the defendant was involved in a three-on-one jail fight. The defendant and two other detainees repeatedly struck a rival detainee, which sent that individual to the medical staff and health services unit for his resulting injuries.

Throughout his life, the defendant has continuously displayed an absolute disregard for the law and societal norms. As referenced above, the defendant has already been sentenced to an extended period of incarceration, which has clearly not curbed his criminal conduct. When he is given the possibility of probation or parole, even on violent conduct, he is subsequently found in violation of that parole and incarcerated as a result of new serious offenses, like this drug trafficking indictment. When he is incarcerated, he continues this violence, aiming his attack at another inmate, a gang rival.

An important aspect of this sentencing is the relevant characteristics of the defendant other than the criminal history issues discussed above. See 18 U.S.C. § 3553 (a)(1). The government submits that the defendant is a known associate of the Annunciation Road / Mission Hill gang in Boston. *See* PSR at ¶ 12. Gang association is an important sentencing

consideration.  *See* Huebner, et al., "Gangs, Guns, and Drugs: Recidivism Among Serious, Young Offenders" Criminology & Public Policy Volume 6 Issue 2 (2007) ("Gang membership, even within a high-risk sample, emerged as a significant predictor of recidivism as more traditional risks for offending, such as gun use, demographics, prior convictions, and community disadvantage, did not"); *See also United States v. Johnson*, 184 Fed. Appx 746 (10th Cir. 2006) (at sentencing, gang membership was significant and appropriate for inclusion in the PSR because... "gang members are more likely to engage in criminal activity and perhaps related violence than ordinary citizens"); *United States v. Aguirre-Roche*, 2008 WL 5401440 (11th Cir. 2008) (district court properly considered defendant's gang membership at sentencing).  The government seeks to prevent the defendant from returning to his criminal conduct of drug dealing and gang activity upon his release from incarceration.

    a. **Specific and General Deterrence**

The Court should also consider deterring both the defendant and others.  *See* 18 U.S.C. § 3553(a)(2)(B) (the court may impose a sentence "to afford adequate deterrence to criminal conduct")**.**

    i. **The Need for Specific Deterrence**

The defendant has served time in jail before (*see* PSR at ¶¶ 42, 43, 44, 45), but he has clearly not gotten the message of compliance with society's laws from his prior jail and state prison terms.  This sentence needs to make that point unmistakably clear, that his conduct has consequences. The defendant's criminal history demonstrates that his conduct in this instant offense was not an outlier event, but a continuation of nearly two decades of repeated serious criminal offenses. For that and other reasons, the government recommends 60 months incarceration.

### ii. The Need for General Deterrence

The desire to achieve general deterrence is a challenging task. However, there is valuable research and literature that provide guidance on the lethal effects that drugs and gangs have on society. *See* Decker, et al., "On Gangs" (Temple University Press, 2022), p 154 ("[g]angs offer many advantages to those who sell drugs, regardless of whether drugs are distributed among gang members in an instrumental or informal manner. These advantages include opportunity, economic, substance, and protective components. Gang membership offers the convenience of a (generally) reliable point person or contact who provides the access to drugs"). *See also* Kennedy, "Deterrence and Crime Prevention: Reconsidering the Prospect of Sanction (Routeledge Studies in Crime and Economics 2009), p. 78 ("There is an embarrassment of riches on the high rate of gang offending"). *See also* Braga, et al., "New Approaches to the Strategic Prevention of Gang and Group Involve Violence" in C. Ronald Huff (ed.); "Gangs in America (Sage Publications 2002) (gangs representing less than 1 percent of the population were responsible for at least 60% of the homicides in Boston and at least half the homicides in Minneapolis, Baltimore, and Indianapolis).

The requested sentence serves important purposes of general deterrence. The government seeks that a message be sent to others, like the defendant, who have been in and out of the criminal justice system. The message should be clear, that drug dealing in our communities will not be tolerated. *See* 18 U.S.C. § 3553(a)(1)(B) (sentencing goals include the need to afford adequate deterrence to criminal conduct).

Here, the messages that take into account the seriousness of drug dealing and the need to protect public safety by imposing significant sentences can help make communities safer and deter others from committing the same crimes. The recommended sentence here will communicate the seriousness of the offense to the defendant. Equally important, such a sentence

will tell similarly-situated individuals that if they too continue their criminal conduct and are also convicted in federal court, they too will face serious prison sentences.

### iii. The Need to Protect the Public

Lastly, and perhaps most importantly, this Court should consider the need to protect the public from the defendant. *See* 18 U.S.C. § 3553(a)(2)(C) (the court may impose a sentence to "protect the public from further crimes of the defendant"). The defendant's penchant for drug dealing, coupled with his gang involvement and history of violence, provide a deadly combination that simply must be addressed by the Court's sentence.

### b. **Supervised Release Conditions**

The government also requests a term of 48 months of supervised release. In addition to the standard conditions, the government requests that the Court impose the special conditions set forth in the recommendations made by U.S. Probation, and below, including associational restrictions and curfew.

### i. Curfew

The government requests that the Court impose a curfew from 9:00 p.m. to 6:00 a.m. for the first 15 months after the defendant is released from prison or any community corrections confinement (either under BOP or Court supervision). *See, e.g.*, "Maximum Impact: Targeting Supervision on Higher-Risk People, Places and Times," Pew Center for the States Public Policy Brief (March, 2009) (concluding that Probationers are "at the highest risk of re-arrest during the first few months of community supervision," that arrest rates after 15 months were substantially lowered, and thus recommendation that probation resources be "front-end loaded" to achieve maximum effect). The government also suggests that the defendant's probation officer should be allowed to relax the curfew for work or school and that it be enforced by electronic monitoring.

### ii. Gang Association and Geographic Restriction

1. Associational Restrictions

During the period of supervised release, the defendant should be prohibited from contacting, or being in the company of other individuals who the government asserts are members, associates or affiliates of the Annunciation Road / Mission Hill street gang (many of whom are convicted felons that the defendant is barred by the standard conditions of probation from contacting in any event). The government provides the Court and the probation office with a list of individuals who have prior associations with the defendant and the gang, see Attachment A. The government reserves the right to add to this list at sentencing. [4]

The purpose of both of these restrictions is to aid the defendant's rehabilitation by reducing his opportunities for further crime, and eliminating any expectation from other Annunciation Road / Mission Hill gang members that he will further engage with them in criminal activities.

2. Geographic Restrictions

The defendant's historic interactions with the police and the criminal justice system show that he has repeatedly concentrated his activity in Boston. For this reason, the government request that Court imposes a restriction on the defendant entering the entire city of Boston without the permission of his probation officer. This has been a constant component of the defendant's criminal offenses that go back over two decades.

Appellate courts have routinely upheld such restrictions as a condition of probation or supervised release whenever the restriction served as a deterrent to protect the victimized

---

[4] Because of the sensitive nature of the issue of gang involvement, rather than listing names in Attachment A, the Government proposes to provide Probation with a list of known Annunciation Road / Mission Hill gang members with whom the defendant specifically should be precluded from being in contact without permission from Probation, for Probation to go over with the defendant.

community or rehabilitate the defendant based on his prior record. *See United States v. Garrasteguy,* 559 F.3d 34 (1st Cir. 2009) (affirming on plain error review 12-year restriction from Suffolk County imposed on defendant who sold drugs at Bromley Heath Housing Development); *United States v. Watson,* 582 F.3d 974 (9th Cir. 2009) (validating restriction that prevented the defendant from entering City of San Francisco without the prior approval of his Probation Officer); *United States v. Cothran*, 855 F.2d 749 (11th Cir. 1988)

The requested restrictions should be imposed here because the need for them is fully supported by the record. The restrictions here are based on the defendant's prior criminal conduct, as shown in the PSR, reflecting crimes committed in the company of Annunciation Road / Mission Hill gang members. In seeking these restrictions, the government is also sensitive to preserving established family relationships whenever possible. The restrictions are drafted to give Probation the flexibility to modify the restrictions for good cause shown (such as work or school). In addition, of course the defendant will always have the right to ask the Court to modify them while he is on supervised release.

### iii. Drug testing and Counseling

The defendant should be tested for drugs and alcohol while on supervised release and should be given counseling if considered appropriate by Probation. *See* PSR ¶¶ 86-91.

### iv. Vocational and Educational Training

The defendant has limited vocational skills. The government believes that the Court should make a judicial recommendation that the defendant be provided with any available vocational training while in prison and that he take advantage of any such classes and/or training while on supervised release. *See* PSR ¶¶ 92-93.

### III.  CONCLUSION

For the foregoing reasons, those contained in the PSR, and those to be presented at the sentencing hearing, the government requests the following sentence:

- a term of 60 months' imprisonment;

- a fine within the Guidelines sentencing range, as calculated by the Court, unless the Court finds that the defendant is not able to pay a fine;

- a term of 48 months' supervised release with the conditions outlined above and additionally recommended by probation; and

- a special assessment of $200.

                                            Respectfully submitted,

                                            LEAH B. FOLEY
                                            United States Attorney

By:   */s/ John T. Dawley, Jr.*
        John T. Dawley, Jr.
        Philip C. Cheng
        Assistant U.S. Attorneys

Dated: January 16, 2026

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                                           By:    */s/ John T. Dawley, Jr.*
                                                                                             John T. Dawley, Jr.
                                                                                              Philip C. Cheng
                                                                                              Assistant U.S. Attorneys

Dated: January 16, 2026